UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| WILLIE SHAWN MOORER, |
| Defendant. |

Crim. Action No. 11-129-04 (CKK)

## MEMORANDUM OPINION AND ORDER
(May 10, 2011)

This matter comes before the Court upon the Government's Motion for Emergency Review and Appeal of Release Order. Defendant Willie Shawn Moorer ("Defendant" or "Moorer") initially appeared before Magistrate Judge Deborah A. Robinson on April 27, 2011, and a detention hearing was scheduled for April 29, 2011. An indictment was issued on April 28, 2011, charging Defendant with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. Late in the afternoon on April 29, 2011, Magistrate Judge Robinson held a detention hearing and ordered that Defendant be released pursuant to 18 U.S.C. § 3142. Shortly after that hearing, the Government filed the presently pending Motion for Emergency Review and Appeal of Release Order. Judge Henry H. Kennedy, acting as the emergency judge, stayed the release order pending an evidentiary hearing to review Magistrate Judge Robinson's ruling. The Court held a de novo detention hearing on Tuesday, May 3, during which it heard a proffer of evidence from the Government, testimony from a witness called by Defendant, and argument from both sides. For the reasons stated upon the record at the hearing, which are incorporated herein, the Court vacated Magistrate Judge Robinson's order releasing Defendant and ordered that Defendant be detained pending trial.

## I. BACKGROUND

Defendant Moorer has been charged in an indictment with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), which is a violation of 21 U.S.C. § 846. The indictment also names codefendants Gezo Edwards ("Edwards"), William Martin Bowman ("Bowman"), and Robert Carl Richards ("Richards") as coconspirators. The Government proffered the following evidence during the detention hearing.

Between July and November 2010, Bowman was tracked making five controlled purchases of crack cocaine and powder cocaine totalling about 108 grams. On January 17, 2011, the FBI intercepted a telephone call made by Bowman to a narcotics customer arranging a meeting at a gas station. Around the same time as this call, phone records indicate that Bowman used his other phone to call Moorer. Bowman was then surveilled driving to the gas station in his own vehicle, getting out and entering a vehicle registered to Moorer's girlfriend with an address that Moorer has listed as his own. Bowman then exited the vehicle linked to Moorer and entered a vehicle linked to the narcotics customer with whom Bowman had arranged the meeting, and after a short time returned to the vehicle linked to Moorer. Bowman then returned to his own vehicle, and all three vehicles left the gas station. The Government believes that based on this evidence, this was a narcotics transaction in which Moorer supplied Bowman with narcotics that were sold to the customer and that Bowman then handed back some of the proceeds to Moorer.

During March 2011, the Government identified storage unit A306 at a storage facility located at 3005 Kenilworth Avenue in Hyattsville, Maryland, as being linked to Bowman

2

through physical surveillance and records showing that Bowman had rented the unit through an alias. Video footage from the storage facility on March 10, 2011 showed Bowman rolling a red suitcase past the entrance gate followed by Edwards. Between March 12 and March 14, wiretaps on Bowman's phone indicated that he was arranging with numerous customers to meet for the purpose of arranging drug transactions. Video surveillance showed Bowman entering and exiting the storage facility on each of these dates. Physical surveillance at Bowman's residence on these dates showed Bowman going in and out of his residence and meeting with customers; the FBI was able to link the vehicles that arrived at Bowman's residence to the individuals with whom Bowman spoke on the phone. On March 12, 2011, Richards was observed at Bowman's residence while Bowman met with suspected drug customers. On March 18, 2011, Bowman was observed arriving at the storage facility in a vehicle that had been rented by Richards and which Richards was later seen driving.

On March 21, 2011, law enforcement agents monitored conversations between Bowman and Moorer during which they planned to meet; shortly after that call, agents observed Bowman and Moorer meeting. After meeting with Moorer, Bowman received a call from a suspected drug customer who requested a "deuce," believed to be a reference to 62 grams of cocaine, and Bowman advised the customer that he could take care of that. Bowman then called Moorer and told him, "hey, you know what I just told you, add another one to that one." The Government believes that Bowman had met with Moorer and placed an order for drugs, and that he subsequently added to his order for drugs. After these phone calls, Moorer was observed carrying a white plastic bag and walking into a building with Bowman. About fifteen minutes later, Bowman and Moorer were seen exiting the building without the plastic bag.

3

The Government intercepted calls between Bowman and a suspected drug customer on March 22, 2011, during which the customer said he needed to get some "shirts" from Bowman. Bowman was heard telling the customer that he needed to speak to "Willie." Bowman then called Moorer and arranged to meet him at the Hechinger Mall. The Government believes that Bowman was contacting Moorer for the purpose of supplying drugs, which the customer had referred to as "shirts."

On April 4, 2011, Richards and Bowman were both observed near the post office at the Hechinger Mall. Bowman was seen placing a black duffel bag into Richards's vehicle and getting into Richards's vehicle as they drove to a house associated with Edwards in Lanham, Maryland. Once there, Bowman and Edwards left to go to the Hyattsville storage facility, while Richards returned to Hechinger Mall and gave the black duffel bag to Moorer. Later that day, Bowman and Edwards were observed meeting up with Moorer at the Hechinger Mall.

On April 6, 2011, surveillance at the Hechinger Mall observed Moorer meeting with Bowman and Edwards. Later that day, Bowman flew from Baltimore to Los Angeles.

On April 20, 2011, Moorer was observed meeting with Richards, Bowman, and another individual named Joseph Nell ("Nell") at a Radio Shack off Rhode Island Avenue in Washington, D.C., where they met with Moorer. At the Radio Shack, a Green Dot prepaid debit card was purchased in Nell's name with a value of $1500. The FBI later determined that nearly all of the funds on that card were spent at Door to Door Storage in Jessup, Maryland, a shipping company that specializes in shipping "pod" containers.

On April 25, 2011, surveillance video recorded Bowman's vehicle pulling up to the entrance gate of the storage facility in Hyattsville and shows Richards walking through the entry

gate with a black rolling suitcase. Closed-circuit television video surveillance from inside storage unit A306 shows Bowman placing the black suitcase inside the unit and leaving. Later that day, Bowman and Edwards are seen returning to the storage unit. The video shows Bowman leaving Edwards alone in the storage unit and Edwards opening the black suitcase and handling bundles of blue brick-like packages, 29 in total. The video shows Edwards opening some of the bricks, which contained a white powder, and proceeding to break up, lay out, and put the powder in separate plastic bags. Edwards ultimately left the unit, leaving the suitcase with the powder inside.

On the night of April 25, 2011, the FBI executed a search warrant and seized the contents of storage unit A306. The seized contents approximately 29 kilograms of cocaine, 60 used kilogram wrappers which had suspected cocaine residue, an assault rifle, a semiautomatic pistol, two bullet-proof vests, a scale, a money counter, and other paraphernalia. The street value of the cocaine seized is approximately $1 million.

On April 26, 2011, surveillance footage showed Bowman entering the storage unit. When Bowman realized that its contents had been seized, Bowman placed a call to Richards and told him to come to the storage facility in an upset tone of voice. Richards is overheard telling someone in the background that they need to go to the storage unit. Bowman was then arrested as he was leaving the storage facility. Richards was apprehended as he was driving up to the entrance of the storage facility in Bowman's vehicle, and Moorer was apprehended as he was following Richards. Edwards was arrested at a nearby intersection that same morning.

Once in custody, Moorer admitted that on the date of his arrest, he was planning to meet Bowman and Richards at Edwards's sister's residence where Moorer planned to obtain between

125 and 250 grams of cocaine. Moorer also said that he had previously received that amount of cocaine from Bowman on several occasions, which he then sold. Moorer also stated that Bowman would occasionally assist him in selling the drugs when he could not find enough customers on his own. He also claimed that Richards had asked him to follow him to the storage unit on the day they were arrested. Bowman also gave a statement while in custody admitting that the cocaine that was recovered from the storage unit had been shipped from California in a storage container or pod to somewhere in Maryland.

During the period between January 18, 2011 and March 18, 2011, phone records indicate that Moorer had been in contact with Bowman 129 times. A second wiretap between March 19 and April 26, 2011 showed 127 contacts between Moorer and Bowman.

During the detention hearing, Moorer elicited testimony from FBI Special Agent Winifred Fleming, who indicated that Moorer said he had a headache when he made statements after his arrest. When she asked Moorer if he knew where the drugs came from, he told her that they came from California.

## II. THE BALANCE OF FACTORS MILITATES IN FAVOR OF DETAINING DEFENDANT

The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community. Because Defendant has been indicted for an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). In conducting its analysis, the

Court examines the available information that touches upon: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community. *See id.* § 3142(g). In considering these factors, the Court determines that Defendant has not rebutted the presumption in favor of detention, and therefore the Court orders that Defendant be detained pending trial.

  *A. Nature and Circumstances of the Offenses Charged*

In determining the nature and circumstances of the offense charged, the Court must take into consideration whether the offense is a crime of violence or involves a controlled substance or firearm. In this case, the charged offense is very serious, involving a large amount of cocaine, with a street value of approximately $1 million. This suggests that this is not a "minor" drug offense but rather a sophisticated drug trafficking conspiracy. Furthermore, the items seized from the storage unit included not just drugs but firearms, suggesting that Moorer was involved in a potentially violent drug conspiracy. Therefore, the Court concludes that the nature and circumstances of the charged offense weigh strongly in favor of detention.

  *B. Weight of the Evidence Against the Defendant*

The weight of the evidence is the most critical factor before the Court and the one that the parties have primarily focused on. The Court finds that the weight of the evidence in this case is significant and therefore weighs strongly in favor of detention. The Government has strong evidence against Bowman based on the controlled purchases of cocaine in 2010, his pattern of arranging meetings with potential customers, and his own inculpatory statements. Bowman also

Court examines the available information that touches upon: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community. *See id.* § 3142(g). In considering these factors, the Court determines that Defendant has not rebutted the presumption in favor of detention, and therefore the Court orders that Defendant be detained pending trial.

  *A. Nature and Circumstances of the Offenses Charged*

In determining the nature and circumstances of the offense charged, the Court must take into consideration whether the offense is a crime of violence or involves a controlled substance or firearm. In this case, the charged offense is very serious, involving a large amount of cocaine, with a street value of approximately $1 million. This suggests that this is not a "minor" drug offense but rather a sophisticated drug trafficking conspiracy. Furthermore, the items seized from the storage unit included not just drugs but firearms, suggesting that Moorer was involved in a potentially violent drug conspiracy. Therefore, the Court concludes that the nature and circumstances of the charged offense weigh strongly in favor of detention.

  *B. Weight of the Evidence Against the Defendant*

The weight of the evidence is the most critical factor before the Court and the one that the parties have primarily focused on. The Court finds that the weight of the evidence in this case is significant and therefore weighs strongly in favor of detention. The Government has strong evidence against Bowman based on the controlled purchases of cocaine in 2010, his pattern of arranging meetings with potential customers, and his own inculpatory statements. Bowman also

Court examines the available information that touches upon: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community. *See id.* § 3142(g). In considering these factors, the Court determines that Defendant has not rebutted the presumption in favor of detention, and therefore the Court orders that Defendant be detained pending trial.

  *A. Nature and Circumstances of the Offenses Charged*

In determining the nature and circumstances of the offense charged, the Court must take into consideration whether the offense is a crime of violence or involves a controlled substance or firearm. In this case, the charged offense is very serious, involving a large amount of cocaine, with a street value of approximately $1 million. This suggests that this is not a "minor" drug offense but rather a sophisticated drug trafficking conspiracy. Furthermore, the items seized from the storage unit included not just drugs but firearms, suggesting that Moorer was involved in a potentially violent drug conspiracy. Therefore, the Court concludes that the nature and circumstances of the charged offense weigh strongly in favor of detention.

  *B. Weight of the Evidence Against the Defendant*

The weight of the evidence is the most critical factor before the Court and the one that the parties have primarily focused on. The Court finds that the weight of the evidence in this case is significant and therefore weighs strongly in favor of detention. The Government has strong evidence against Bowman based on the controlled purchases of cocaine in 2010, his pattern of arranging meetings with potential customers, and his own inculpatory statements. Bowman also

admitted that the cocaine had been shipped from California via a pod storage container, and Moorer was present at the Radio Shack where the Green Dot card was purchased and then used to pay a shipping company that transports pod containers. Moorer's own statements indicate that he had planned to received quantities of drugs from Bowman for the purpose of selling them, and physical surveillance reveals what appear to be drug transactions involving Bowman and Moorer. Moorer also admitted that Bowman helped him sell drugs on occasion. And Moorer was arrested along with his codefendants at or near the storage facility the day after the contents of the storage unit were seized. Bowman's and Moorer's statements are credible and corroborated by other evidence proffered to the Court.

This evidence strongly suggests that Moorer played a significant role in a major conspiracy to distribute cocaine. Given the frequency of his contacts and meetings with Bowman, his own statements admitting his intent to sell cocaine, and the physical surveillance, the Court concludes that the weight of the evidence against Moorer is substantial and justifies pretrial detention.

### C. *History and Characteristics of the Defendant*

With regard to the third factor, Defendant has several prior convictions for serious offenses, including a carjacking for which he served a seven-year sentence and assault in the second degree in 2001 and earlier drugs and weapons charges. Defendant therefore has a history of involvement with both drugs and violent crime, which provides the Court with reason to believe that he may continue to be involved with drugs if he is released before trial. Therefore, this factor weighs in favor of detention.

### D. *The Nature and Seriousness of the Danger to Any Person or the Community that*

*Would Be Posed by the Person's Release*

The criminal indictment against Defendant is serious, implicating a large-scale drug trafficking operation that poses a significant danger to the community. Defendant's alleged involvement in a large-scale drug operation provides the Court with reason to believe that his release would pose a danger to the community. Therefore, this factor weighs in favor of pretrial detention.

### III. CONCLUSION

Upon consideration of all of the evidence and the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds clear and convincing evidence that Defendant's pretrial release constitutes an unreasonable danger to the community, and the Court finds clear and convincing evidence that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were he to be released pending trial. Defendant has failed to rebut the presumption in favor of pretrial detention required by § 3142(e)(3)(A).

Thus, for the foregoing reasons, it is this 10th day of May, 2011, hereby

**ORDERED** that the Government's [8] Motion for Emergency Review and Appeal of Release Order is **GRANTED**; and it is

**FURTHER ORDERED** that Defendant be detained pursuant to 18 U.S.C. § 3142(e); and it is

**FURTHER ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is

**FURTHER ORDERED** that Defendant be afforded reasonable opportunity for private consultation with counsel; and it is

**FURTHER ORDERED** that upon order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the person to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies To:

Joseph Roll Conte
LAW OFFICES OF J.R. CONTE, P.L.L.C.
400 Seventh Street, NW
Washington, DC 20004-2202

Steven B. Wasserman
U.S. ATTORNEY'S OFFICE
Narcotics Section
555 Fourth Street, NW
Washington, DC 20530